# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ACA CONNECTS – AMERICA'S
COMMUNICATIONS ASSOCIATION;

CTIA – THE WIRELESS ASSOCIATION®;

NCTA – THE INTERNET & TELEVISION
ASSOCIATION; and

USTELECOM – THE BROADBAND
ASSOCIATION,

               Plaintiffs,

     v.

AARON FREY, in his official capacity as
Attorney General of the State of Maine,

           Defendant.

Civil Action No. 1:20-cv-00055-LEW

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR JUDGMENT ON THE PLEADINGS AND
## OPPOSITION TO DEFENDANT'S PARTIAL
## CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

I. The Pleadings Provide a Sufficient Basis for the Court To Hold That the
Statute Violates the First Amendment (Count One) ............................................................ 3

    A. The Statute's Content- and Speaker-Based Restrictions Are Subject to
Strict Scrutiny .................................................................................................................. 3

    B. The Statute Fails Any Degree of First Amendment Scrutiny ................................. 6

II. On Its Face, the Statute Is Unconstitutionally Vague (Count Two) ................................ 11

III. Federal Law Preempts the Statute ..................................................................................... 13

    A. Congress's Vacatur of the *ISP Privacy Order* Carries the Full
Preemptive Effect of Federal Law (Count Three) ................................................. 13

    B. The Statute Conflicts with the *RIF Order* (Count Four) ...................................... 14

    C. Defendant's Concessions Moot Plaintiffs' Impossibility Claim (Count
Five) ............................................................................................................................... 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

CASES

*Arizona v. United States*, 567 U.S. 387 (2012) ............................................................14

*Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579
(S.D.N.Y. 2016) ................................................................................................9

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016).....................9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557
(1980).........................................................................................................6-7, 9

*Comcast Corp. v. FCC*, 579 F.3d 1 (D.C. Cir. 2009) .....................................................5

*Edenfield v. Fane*, 507 U.S. 761 (1993) .........................................................................7

*Fla. Bar v. Went For It, Inc.*, 515 U.S. 618 (1995).......................................................10

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)............................................14, 15

*Gould v. Morgan*, 907 F.3d 659 (1st Cir. 2018), *petition for cert. pending*,
No. 18-1272 (U.S. filed Apr. 1, 2019) ............................................................10

*Grayned v. City of Rockford*, 408 U.S. 104 (1972).......................................................11

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of
Baltimore*, 721 F.3d 264 (4th Cir. 2013) ...........................................................3

*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999)...........7

*Kansas v. Garcia*, 140 S. Ct. 791 (2020) .....................................................................13

*King v. Gen. Info. Servs., Inc.*, 903 F. Supp. 2d 303 (E.D. Pa. 2012)............................9

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001)...................................................7

*Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32 (1999) .......11

*Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) ..........................................2, 6, 14

*Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731 (1st Cir. 1995) .....................5

*NCTA v. FCC*, 555 F.3d 996 (D.C. Cir. 2009) ...............................................................9

*Nat'l Fire Adjustment Co. v. Cioppa*, 357 F. Supp. 3d 38 (D. Me. 2019)......................4

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018)................8, 9

*Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011) ....................................12

*Nickelodeon Consumer Privacy Litig.*, *In re*, 827 F.3d 262 (3d Cir. 2016) ...................12

*Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251 (D.C. Cir. 2004) .............................13

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)......................................................6

*Reno v. ACLU*, 521 U.S. 844 (1997)......................................................................7

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999)..................13, 15

*Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016)........................................................8

*Sleeper Farms v. Agway, Inc.*, 506 F.3d 98 (1st Cir. 2007)...........................................7

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ...................................................3, 4, 5

*SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007) ................................................13

*Turner Broad. Sys., Inc. v. FCC*:

    512 U.S. 622 (1994).........................................................................5

    520 U.S. 180 (1997).......................................................................3, 5

*U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999) ...........................................4, 9

*United States v. Chiaradio*, 684 F.3d 265 (1st Cir. 2012) ............................................3

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) ...................................7

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)........................................................................................4

*Watts v. United States*, 161 F.2d 511 (5th Cir. 1947) ................................................13


ADMINISTRATIVE DECISIONS

Declaratory Ruling, Report and Order, and Order, *Restoring Internet Freed*om, 33 FCC Rcd 311 (2018), *petitions for review denied in part, Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) ..........................................................5, 14

Report and Order, *Protecting the Privacy of Customers of Broadband and Other Telecommunications Services*, 31 FCC Rcd 13911 (2016) ................1, 2, 8, 10, 12, 13, 14

CONSTITUTION, STATUTES, AND REGULATIONS

U.S. Const.:

    Art. VI, cl. 2 (Supremacy Clause)..................................................................2, 14

    Amend. I .................................................................................1, 3, 4, 6, 9, 10, 11

Communications Act of 1934, 47 U.S.C. § 151 *et seq.*:

    47 U.S.C. § 257...............................................................................................14

Congressional Review Act, 5 U.S.C. § 801 *et seq.* ..............................................13, 14

Me. Rev. Stat. tit. 35-A:

    § 9301(1)(C)...............................................................................................8, 12

    § 9301(1)(C)(1)..............................................................................................12

    § 9301(3)(A) ...................................................................................................8

    § 9301(3)(C) .................................................................................................12

    § 9301(4)(A) ............................................................................................11, 15

    § 9301(4)(B) ...................................................................................................8

    § 9301(4)(F) ...................................................................................................6

47 C.F.R.:

    § 64.2002(f) ..................................................................................................12

    § 64.2002(n) ..................................................................................................12

    § 64.2004(a)(3) .............................................................................................10

    § 64.2004(a)(5)-(6) .......................................................................................10

LEGISLATIVE MATERIALS

163 Cong. Rec.:

    H2467 (Mar. 28, 2017) ..................................................................................14

    H2493 (Mar. 28, 2017) ..................................................................................14

H2497 (Mar. 28, 2017) ...............................................................................................14

S1900 (Mar. 22, 2017) ...............................................................................................14

S1925 (Mar. 22, 2017) ...............................................................................................14

S1928 (Mar. 22, 2017) ...............................................................................................14

Hearing on L.D. 946, An Act To Protect the Privacy of Online Customer
Information (Apr. 24, 2019), https://bit.ly/3aMTmWZ.....................................................13

Me. J. & Leg. Rec. H-699 (May 29, 2019), https://bit.ly/3cNk0zj.....................................................5

# INTRODUCTION

Defendant and its *Amici* have filed many pages of briefing but still cannot salvage the Statute. Implicitly acknowledging its frailty, Defendant offers narrowing constructions to correct some of its flaws, simply ignores others, and attempts to backfill the absence of legislative findings with post-hoc rationalizations. None of this overcomes the Statute's insurmountable constitutional and preemption problems.

Those problems derive from the undisputed fact that the Statute is an extreme outlier in the field of privacy regulation. Unlike federal privacy standards and other state laws governing customer information, the Statute stands alone in subjecting ISPs — and no other speakers — to an onerous opt-in consent regime that applies even to *non*-sensitive information. And it forbids ISPs from offering customers *any* cost-savings or other inducements for agreeing to opt in. Worse, Defendant cannot explain the Statute's arbitrary, content-based lines regarding the use of sensitive customer information, permitting its use for communications-related but not non-communications-related marketing and for certain emergency communications but not public service announcements. These haphazard distinctions — none of which the Legislature addressed, let alone justified — fall far short of the careful tailoring the First Amendment demands. Regardless of the standard applied, Defendant's opposition confirms that the Statute violates the First Amendment on its face.

Without a legislative record that could purport to justify the Statute's restrictions, Defendant's opposition attempts a post-hoc rationalization that cannot satisfy the First Amendment. And, regardless, Defendant's attempt to backfill the complete absence of legislative findings comes up short. Cherry-picked one-liners from the Statute's sponsors and an improper expert declaration will not suffice. Nor will invoking the FCC's *ISP Privacy Order*, which diverges from the Statute in important (and unaddressed) respects, themselves never tested

in court because Congress's vacatur of that *Order* meant that it was never subjected to constitutional scrutiny.

Defendant also offers narrowing constructions, not evident from the face of the Statute. Even so, the Statute remains unconstitutionally vague, creating a threat of enforcement actions that will chill Plaintiffs' members' speech — at considerable financial and constitutional cost. Notwithstanding Defendant's praise (at 12) of this vagueness as "flexibility," ISPs will inevitably face enforcement actions if they fail to guess accurately how Defendant (or future Attorneys General) will interpret that vague language. For Plaintiffs' members, the speech consequences will be severe when the State can begin to enforce the Statute on August 1, 2020.[1]

Finally, Defendant's opposition confirms that the Statute conflicts with federal law. Defendant concedes that the Statute was specifically designed to undermine Congress's vacatur of the *ISP Privacy Order*. That action, like any other federal statute passed by the Congress and signed by the President, carries the full preemptive force of the Supremacy Clause. And Defendant overlooks that the FCC exercised *statutory* authority (which the D.C. Circuit upheld in *Mozilla*) when the agency decided to protect consumers' privacy through mandatory disclosures and ex post privacy enforcement by the FTC — which can act against *all* companies — and rejected ex ante proscriptive rules that single out ISPs. Defendant cannot dispute that the Statute stands as an obstacle to the FCC's decision.[2] Declaring the Statute preempted would appropriately leave the FTC as the privacy "cop on the broadband beat," applying uniform standards to all online, and offline, companies.[3]

---

[1] Although the Statute takes effect on July 1, 2020, Defendant agreed to delay any enforcement actions for one month in light of Plaintiffs' members' need to devote efforts to avoiding service interruptions during the COVID-19 pandemic.

[2] As explained below, Defendant's binding narrowing constructions moot Count Five.

[3] Compl. ¶ 32; *see also* Access Now Br. 8-9 (noting FTC's enforcement activity).

In sum, the Statute on its face violates the First Amendment, is unconstitutionally vague, and is preempted. The Court can and should resolve these issues on the pleadings. Plaintiffs respectfully request that the Court do so before August 1, 2020.

I.      **The Pleadings Provide a Sufficient Basis for the Court To Hold That the Statute Violates the First Amendment (Count One)**

The Court can and should resolve Plaintiffs' First Amendment claim on the pleadings. Whether the Statute unduly burdens protected speech can be decided from the statutory text and uncontested facts. Defendant does not (and cannot) show that the Legislature made *findings* in support of its decision to restrict only ISPs, or in support of any of the arbitrary, content-based lines the Statute draws. Defendant's assertion that discovery might yield post hoc rationalizations for the Statute cannot satisfy its burden to show that the Legislature's decisions were "supported by substantial evidence *in the record before [it]*." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 211 (1997) ("*Turner II*"). That is not a question on which discovery will bear — it is neither the Court's task nor the role of an expert to backfill the legislative record. *See*, *e.g.*, *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (en banc) ("supplemental materials cannot sustain regulations where there is *no* evidence in the pre-enactment legislative record").

A.      **The Statute's Content- and Speaker-Based Restrictions Are Subject to Strict Scrutiny**

Defendant does not contest that ISPs' use of consumer information to communicate with customers is protected "speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).[4] Rather, it asserts (at 2) that the Statute targets only

---

[4] Public Knowledge (at 11-14) and the Knight Institute (*passim*) argue otherwise. Because that argument is raised only by *Amici*, it is not properly before the Court. *See United States v. Chiaradio*, 684 F.3d 265, 284 n.7 (1st Cir. 2012) (applying "the established principle that an amicus may not interject into a case issues which the litigants, whatever their reasons

commercial speech, without disputing Plaintiffs' demonstration that the Statute also restricts speech that does "more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976). For instance, the Statute restricts ISPs' use of geolocation information for location-based public service announcements, stripped of any advertisement or commercial transaction. The Statute also — by singling out ISPs *only* — includes speaker-based restrictions. The content- and speaker-based restrictions on commercial and non-commercial speech are subject to strict scrutiny, and therefore "presumptively violat[e]" the First Amendment, *Nat'l Fire Adjustment Co. v. Cioppa*, 357 F. Supp. 3d 38, 44 (D. Me. 2019).

*First*, the Statute's speaker-based restrictions single out ISPs' speech, *see Sorrell* 564 U.S. at 564, without regulating other speakers with access to the same or even more personal information, including edge providers, data brokers, and software developers, which are by far the dominant players in the market for targeted advertising and the overwhelming focus of FTC enforcement actions.[5] Defendant's recitation of a handful of stray statements from individual legislators to justify singling out ISPs cannot substitute for the *findings* needed to support the Legislature's conclusions. And Defendant ignores that Representative Grohoski, whom it

---

might be, have chosen to ignore"). Defendant did not raise this argument for good reason: *Amici* cite no case holding that speech is unprotected when it uses information conveyed in a commercial transaction, and ignore that the Statute sweeps more broadly. The Tenth Circuit rejected similar arguments that the First Amendment does not protect speech that relies on information obtained through the purchase of telephone service and the calls themselves. *See U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999). And the Knight Institute's argument (at 11) that speech is protected only where viewpoint discrimination exists has it backwards. In *Sorrell*, the Supreme Court began with the recognition that the "marketing" there was "speech," and then held that the law impermissibly "disfavor[ed] marketing, that is, speech with a particular content." 564 U.S. at 564.

[5] *See* Pls.' Mot. 3-4, 11. Even the Mayer Declaration — which Defendant acknowledges (at 1 n.2) is not "properly" considered on Plaintiffs' motion — recognizes (at ¶ 31) that some edge providers "have broad visibility into a consumer's activities across diverse online contexts."

repeatedly quotes (at 3, 4, 8), said it "would be great" to regulate edge providers "if we could," but believed that doing so would impermissibly "regulate interstate commerce." Leg. Rec. H-699. But this same concern should have militated against regulating ISPs, which the FCC has consistently concluded provide *interstate* service.[6] In all events, this comment undermines any claim that ISPs are uniquely situated relative to others with access to the exact same or more consumer information. By contrast, in *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994), the Supreme Court determined that Congress had "justified" its finding of a "special characteristic[ ]" of cable companies after a "factfinding process" that had been "recited in the text of the [Cable] Act itself," *id.* at 632, 661. Here, the Maine Legislature made *no* findings that would brand ISPs with any "special characteristic" in this context, and there is none.[7]

Defendant's observation (at 12) that "technology evolves" does not justify the Statute's arbitrary line-drawing — to the contrary, it provides a practical reason why it is imperative that any law "aimed at particular speakers," *Sorrell*, 564 U.S. at 567, be "justified by some special characteristic of the regulated speaker," *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 740 (1st Cir. 1995). In particular, requiring specific — and fresh — legislative findings of a special characteristic sufficient to single out a particular speaker ensures that regulators do not use outdated assumptions to drag in protected speech. *Cf. Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009) ("Cable operators . . . no longer have the bottleneck power over programming that concerned the Congress in 1992."). But using incomplete and outdated assumptions is *at best* what the Legislature accomplished here. Indeed, Defendant (at 8) ignores competition

---

[6] *See RIF Order* ¶ 199 (stating that "it is well-settled that Internet access is a jurisdictionally interstate service"); *id.* ¶ 199 n.739 (citing authority).

[7] *Turner II* does not permit Defendant to defend (at 5 n.3) the Statute using evidence assembled in litigation. There, the record compiled "during Congress' three years of preenactment hearings" buttressed findings codified in the law itself. 520 U.S. at 187, 191-92.

among mobile broadband providers, and *Amici* rely on assertions about fixed broadband that conflict with more recent FCC findings "that competition exists in the broadband market," which the D.C. Circuit upheld. *Mozilla Corp. v. FCC*, 940 F.3d 1, 57-58 (D.C. Cir. 2019) (per curiam); *see also*, *e.g.*, ACLU Br. 13.

*Second*, the Statute's restrictions are content based because they "defin[e] regulated speech by particular subject matter." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). Defendant nowhere explains how the Statute's differing treatment of ISPs' speech concerning the marketing of communications-related services (exempted) versus speech concerning the marketing of non-communications-related services (prohibited absent consent) could be anything other than content based. And while the Statute does not require ISPs to obtain any consent to use a customer's geolocation information for the purpose of aiding certain emergency services, Me. Rev. Stat. tit. 35-A, § 9301(4)(F) — a prudent exception — it inexplicably requires ISPs to obtain opt-in consent to use the *same* information to make other public service announcements, such as an alert about an impending natural disaster. Defendant's suggestion (at 7) that Plaintiffs "have not . . . offered any support" for this claim is refuted by the Statute's terms, which provide that ISPs can "provide geolocation information concerning [a] customer" only in the context of "responding to a customer's call for emergency services" or to a provider of information or database management services solely "for the purpose of assisting in the delivery of emergency services in response to an emergency." Me. Rev. Stat. tit. 35-A, § 9301(4)(F). That language bars other uses — for example, to target weather alerts to customers in a particular area.

## B.     The Statute Fails Any Degree of First Amendment Scrutiny

Even if the Statute were not subject to strict scrutiny, Defendant could not establish that the Statute "directly advances" a "substantial" government interest and "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*

*of N.Y.*, 447 U.S. 557, 566 (1980).[8]  Maine's generalized interest in privacy does not suffice to justify the assumption that ISPs, and only ISPs, pose a unique and actual threat to consumer privacy relative to all the other businesses with access to the same consumer information, entities that the FTC regulates uniformly alongside ISPs, but that the Statute leaves untouched.

Defendant's effort to draw after-the-fact conclusions from the statements of two legislators cannot meet this burden.  *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000) ("conclusory statement" from one of the statute's "sponsors" does not satisfy the government's burden to provide "support for the restriction").  Rather, the task of identifying this specific interest belongs to the Legislature as a whole, and it has not done so; Defendant cannot ask the Court "to supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993); *see also Reno v. ACLU*, 521 U.S. 844, 879 (1997) (stating that, "[p]articularly in the light of the absence of any detailed findings by the Congress, or even hearings addressing the special problems of the [Communications Decency Act of 1996 ('CDA')], we are persuaded that the CDA is not narrowly tailored").

Nor is there "a reasonable fit between the means and ends of the [Statute]." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001).  Defendant acknowledges that ISPs are not the only speakers with access to customer personal information, but they are the only speakers the Statute restricts — a defect relevant not only to the level of applicable scrutiny, but also to the existence of a reasonable fit between the Statute's means and purported ends.  *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 193-94 (1999).  Defendant's mischaracterization of ISPs (at 7) as playing a "unique gatekeeping role" is no reason to subject

---

[8] Defendant does not brief — and thus forfeits — any argument that the Statute should be subject to any standard less rigorous than intermediate scrutiny.  *See Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 103 n.3 (1st Cir. 2007).

ISPs to an onerous opt-in consent regime while leaving Internet giants like Google and Facebook that have access to the same or more personal information entirely unregulated — a fatal "disconnect between [the Statute's] stated purpose and its actual scope." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2376 (2018) ("*NIFLA*").

Similarly, the Statute's crazy-quilt of exceptions belie the narrow tailoring that Defendant concedes (at 9) is required. For example, the Statute permits ISPs to use any "customer personal information without customer approval" to "advertise or market the provider's communications-related services to the customer." Me. Rev. Stat. tit. 35-A, § 9301(4)(B). But to use the *same* information to advertise or market the provider's *non*-communications-related services to the *same* customer, ISPs must first obtain opt-in consent. *See* Pls.' Mot. 15. Defendant offers no justification for this baseless distinction between the speech the Statute permits and prohibits.

Separately, the Legislature failed to consider a narrower opt-out consent regime for the non-sensitive information that is subject to opt-in under the Statute. *See Rideout v. Gardner*, 838 F.3d 65, 74 (1st Cir. 2016) (no narrow tailoring where State had "too readily forgone options that could serve its interests just as well, without substantially burdening" speech). Defendant justifies (at 12-13) the Statute's opt-in regime as though it applies only to sensitive information, overlooking that the Statute also subjects considerable "non-sensitive" information to opt-in consent — including non-identifying demographic data (*e.g.*, gender), billing information (*e.g.*, zip code), and "Internet protocol addresses," Me. Rev. Stat. tit. 35-A, § 9301(1)(C), (3)(A), none of which even the FCC defined as sensitive information subject to opt-in consent in the *ISP Privacy Order*. Defendant never explains why the Legislature made these decisions and fails even to acknowledge the deviation from both the *ISP Privacy Order* and federal and state privacy laws that properly reserve opt-in consent solely for *sensitive* information. *See* Pls.' Mot.

8, 13 (collecting statutes). "[P]recision . . . must be the touchstone when it comes to regulations of speech." *NIFLA*, 138 S. Ct. at 2376 (omission in original).

In this respect, this case is indistinguishable from *U.S. West*, which held that "merely speculat[ing]" that some customers would not opt-out — speculation in which the ACLU engages (at 19), but Defendant does not suggest has any basis in the legislative record — "hardly" comports with the narrow tailoring the First Amendment requires. 182 F.3d at 1239. For this reason alone, the Statute's opt-in regime cannot survive *Central Hudson* given Maine's "failure to adequately consider an obvious and substantially less restrictive alternative, an opt-out strategy." *Id.* at 1238. The absence of any legislative consideration of less-restrictive alternatives distinguishes this case from *NCTA v. FCC*. There, the FCC responded to *U.S. West* by "carefully consider[ing] the differences between" opt-in and opt-out "approaches," and it ultimately subjected a *narrow* class of information — such as "details about who [customers] call and when" — to opt-in consent. 555 F.3d 996, 997, 1002 (D.C. Cir. 2009). Maine did no such thing. And, contrary to *Amici*'s parade of horribles, *see* Knight Inst. Br. 12-14, finding that Maine failed to narrowly tailor its Statute, instead creating a patchwork of irrational exceptions, would not suggest that other, differently structured privacy laws are unconstitutional.[9]

Defendant's attempt (at 5) to excuse the State's concededly "less exhaustive factfinding" erroneously assumes the existence of *some* fact-finding to which the Court could defer. But

---

[9] The ACLU (at 4-6) cites cases that prove that invalidating the Statute would not call into question other laws. In both *Boelter* cases, the courts confronted a statute that: covered all companies that held the information at issue; had only narrow, limited exceptions; and drew different lines, such as applying opt-out consent to *all* direct marketing. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 449 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 601-02 (S.D.N.Y. 2016). In *King v. General Information Services, Inc.*, 903 F. Supp. 2d 303, 311 (E.D. Pa. 2012), the court agreed that the only way to stop the harm caused by disseminating arrest records was to prohibit disseminating arrest records — an unremarkable proposition that says nothing about the lawfulness of the Statute.

there is none; Defendant points to "*no* evidence" before the Legislature supporting its line-drawing and departures from the *ISP Privacy Order*. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628-29 (1995). *Gould v. Morgan*, 907 F.3d 659 (1st Cir. 2018), *petition for cert. pending*, No. 18-1272 (U.S. filed Apr. 1, 2019), thus supports Plaintiffs, not Defendant, as the First Circuit concluded that, whatever deference a legislature is owed, it must be shown to have "drawn reasonable inferences based on substantial evidence." *Id.* at 676. No such showing exists here, and Defendant cannot fill in that gap now.

Finally, Defendant's suggestion (at 5-6) that the Statute is "in lockstep" with the *ISP Privacy Order* is both wrong and irrelevant. The Statute deviates from that *Order* in important ways that the Legislature — like Defendant — failed to address, let alone justify as narrowly tailored measures. Critically, the FCC "distinguishe[d] between sensitive and non-sensitive customer information," limiting the more burdensome opt-in consent to the former. *See ISP Privacy Order* ¶ 172; *id.* ¶¶ 384-386 (distinction necessary to ensure narrow tailoring). The Statute contains no comparable limitation. Also unlike the Statute, the *Order* allowed ISPs to offer incentives in exchange for customers' providing opt-in consent. *Id.* ¶¶ 298-303. And the *Order* contained critical exceptions that the Statute omits. *See* 31 FCC Rcd at 14083, App. A, § 64.2004(a)(3), (5)-(6). These unexplained deviations belie Defendant's repeated suggestions (*e.g.*, at 4, 6, 10) that the Legislature relied on the "mountain of research that buttressed the FCC's 2016 Privacy Order." In view of Defendant's made-for-litigation assertion, the material deviations from the *ISP Privacy Order* highlight additional ways in which the Statute is insufficiently tailored. The Statute goes far beyond the *ISP Privacy Order* in burdening speech.

Regardless, the *ISP Privacy Order* was never subject to First Amendment scrutiny because Congress vacated it before any court challenges could be filed. Defendant cannot

support its *more* burdensome ISP-only rules by reference to a regime from which the Statute

departs *and* that Congress rejected before any court reviewed it under the First Amendment.

## II.      On Its Face, the Statute Is Unconstitutionally Vague (Count Two)

Defendant does not seriously dispute that Plaintiffs' vagueness claim can be resolved on

the face of the Statute.  And its merits arguments mischaracterize Plaintiffs' claim.  Plaintiffs do

not argue overbreadth or suggest that the Statute will "be applied unconstitutionally *to others*."

*Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999) (emphasis

added).  Rather, the Statute's speech restrictions *on ISPs* "are not clearly defined," *Grayned v.

City of Rockford*, 408 U.S. 104, 108 (1972), and so ISPs themselves will be chilled from

engaging in protected speech for fear that it might invite enforcement actions.  Defendant does

not dispute (nor could it) that there are serious costs, in terms of both speech interests and

financial burden, from such over-compliance.

Defendant's narrowing constructions — while welcome — only confirm the Statute's

lack of precision.  As Defendant now reads the Statute (at 19-20), "aggregate, deidentified

information" is not customer personal information, "the aggregation and deidentification . . . is

not a 'use' of customer personal information," and the Statute (in § 9301(4)(A)) allows the use of

information to comply with "federal requirement[s] for the provision of broadband Internet."

None of that is evident from the face of the Statute.  But these constructions do nothing to

remediate the vagueness infecting the Statute.  For instance, Defendant fails to answer the simple

question whether the Statute applies to visitors to Maine who access the Internet from their

smartphones while in the State.  Defendant's statement (at 13) that the statute excludes those not

"physically billed for those services within the State" might be a roundabout way of saying that

visitors are exempt.  But Defendant's refusal to say so clearly leaves mobile broadband providers

guessing as to the measures required to comply with the Statute.

Defendant also does not dispute that the Statute's open-ended definition of "[p]ersonally identifying information," Me. Rev. Stat. tit. 35-A, § 9301(1)(C)(1), gives no guidance as to what information, beyond the enumerated items, might be subject to opt-in consent. Defendant suggests (at 12 n.6) that the Court resolve this deficiency by severing the "including but not limited to" clauses — an appropriate remedy for *this* instance of vagueness. But that would not give ISPs fair warning as to what information is subject to opt-out consent because it "pertain[s] to a customer" but "is not customer personal information." Me. Rev. Stat. tit. 35-A, § 9301(3)(C). Defendant says (at 13) only that opt out applies to whatever "information . . . falls outside the scope of § 9301(1)(C), but nonetheless still warrants some protection," leaving ISPs to guess at what that might be.[10]

The Statute is not merely flexible, as Defendant suggests (at 12). Statutory flexibility — including by clarifying that an agency can later add *specific* restrictions through a defined rulemaking process, *see In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 287 (3d Cir. 2016) — does not foreclose "fair warning," whereas baking open-endedness into a law turns enforcement into a game of "gotcha." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011). Far from supporting Defendant's position (at 12), the *ISP Privacy Order* illuminates this fundamental distinction. The FCC stated that, although "sensitive customer PI includes, at a minimum," the enumerated categories of information, a provider would be "in compliance" if it applied opt-in consent only to the "specifically identified categories of information." *ISP Privacy Order* ¶ 177. The Statute does not include a similar safe harbor to ensure fair warning.

---

[10] Defendant erroneously asserts (at 13) that this vagueness reflects the *ISP Privacy Order*'s requirement "that ISPs permit customers to opt-out of sharing 'non-sensitive customer PI,' without further defining the term." The *ISP Privacy Order* defined both "customer PI" and the subset of that information constituting "sensitive customer PI." *See ISP Privacy Order*, 31 FCC Rcd at 14080, App. A, § 64.2002(f), (n).

Defendant's resort to severance and *seriatim* narrowing constructions transforms the judicial exercise of statutory interpretation into the legislative one of statutory revision. This Court should decline to take a blue pencil to the Statute and instead take Maine's concessions for what they are: evidence of its impermissibly vague terms and unconstitutional status.

## III.    Federal Law Preempts the Statute

As Defendant's cross-motion indicates, Plaintiffs' preemption claims can be resolved without discovery. Even after Defendant's narrowing constructions (at 19-20), which will bind Defendant in future enforcement proceedings, *see Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 36 (1st Cir. 1999), federal law still preempts the Statute in two ways.

### A.    Congress's Vacatur of the *ISP Privacy Order* Carries the Full Preemptive Effect of Federal Law (Count Three)

Defendant argues (at 16) that no court has found preemption under the Congressional Review Act ("CRA"). But that is not surprising as the CRA is rarely invoked, and no other State has attempted to undo any other congressional vacatur of a federal rule. Defendant also cites no case holding that a CRA joint resolution signed by the President carries less weight than any other federal statute. And "[t]here is no question" that a joint resolution signed by the President "is a law, enacted in accordance with the bicameralism and presentment requirements." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) (per curiam); *see Watts v. United States*, 161 F.2d 511, 513 (5th Cir. 1947) (same). The 2017 CRA resolution vacating the *ISP Privacy Order* thus is imbued with full preemptive effect. *See Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (federal preemption requires "a constitutional text, federal statute, or treaty"). Defendant does not contest that the Legislature's express stated purpose of the Statute was to "frustrate" this federal law by undoing what Congress had done. *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530-31 (1st Cir. 2007); *see also* L.D. 946 Hearing (testimony of Sen. Guerin).

Given the CRA joint resolution's "history" and "structure" — to vacate the *ISP Privacy Order* as an obstruction to the adoption of a uniform consumer privacy regime — the Statute impermissibly stands as "an obstacle to the regulatory system Congress chose." *Arizona v. United States*, 567 U.S. 387, 406 (2012). Defendant fails to identify a single statement of congressional intent that undermines the widely shared view that Congress meant to prevent the imposition of ISP-only rules and to facilitate the creation of "a single, uniform set of privacy rules." 163 Cong. Rec. S1900, S1928 (Mar. 22, 2017) (Sen. Thune); *see id.* at S1925 (Sen. Flake) (faulting the FCC for imposing "onerous privacy regulations on broadband providers while leaving the rest of the internet under the successful FTC regime"); 163 Cong. Rec. H2467, H2493 (Mar. 28, 2017) (Rep. Flores) (criticizing "an uneven playing field between service providers and content providers"); *see also* Pls.' Mot. 4 (collecting statements from Rep. Blackburn and Rep. Collins). Holding that the CRA preempts the Statute would not call into question "other existing Federal and State privacy rules" that do *not* single out ISPs in the way that Congress rejected. 163 Cong. Rec. at H2497 (Rep. Collins). And statements by those who *opposed* the joint resolution (*e.g.*, Rep. Capuano (*see* Def.'s Opp. 17)) do not establish Congress's intent in enacting it.

## B.      The Statute Conflicts with the *RIF Order* (Count Four)

Contrary to Defendant's claim (at 18) that the FCC in the *RIF Order* found itself without "power" to do anything to regulate broadband, the FCC adopted the Transparency Rule — which pairs mandatory privacy disclosures, *RIF Order* ¶ 223, with privacy enforcement by the FTC, which has authority over *all* companies, not just ISPs, *id.* ¶ 234 — using its statutory authority under 47 U.S.C. § 257. The D.C. Circuit upheld the Rule as a lawful exercise of that statutory power. *See Mozilla*, 940 F.3d at 18. It thus carries the full preemptive force of the Supremacy Clause. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 883-84 (2000).

Defendant's observation (at 18) that it would not be "impossible" to comply with both the Transparency Rule and the Statute ignores the relevant conflict. The FCC has decided — acting pursuant to delegated statutory authority — that privacy disclosures and uniform enforcement against all companies, instead of proscriptive rules that single out ISPs (i.e., the Statute's approach), best balance federal policies and consumer interests. The Statute strikes a different balance that "would stand as an 'obstacle' to the accomplishment of that objective," and so it is preempted. *Geier*, 529 U.S. at 886. The Supreme Court found preemption in similar circumstances in *Geier*, concluding that state tort liability for not installing airbags would be an "obstacle" to the federal agency's determination that "a gradually developing mix of alternative passive restraint devices" best balanced manufacturer and consumer interests. *Id.* at 884-66.

### C. Defendant's Concessions Moot Plaintiffs' Impossibility Claim (Count Five)

Defendant's concessions (at 19-20) that the Statute does not restrict the use of de-identified or aggregated information and affirmatively permits compliance with "federal requirement[s] for the provision of broadband Internet" harmonize the Statute with Form 477 by deferring to the latter. *See* Me. Rev. Stat. tit. 35-A, § 9301(4)(A). And Plaintiffs take Defendant's concession (at 20) that the Statute would not require an ISP to disregard a court's scheduling order to mean that an ISP would not violate the Statute by complying with discovery requests that seek relevant information otherwise protected by the Statute (initial disclosures aside). Because these clarifications — though not obvious from the face of the Statute — are "unequivocal," they will preclude any attempt by Defendant to enforce a contrary interpretation of the Statute in a future case, *Whitehouse*, 199 F.3d at 36, and moot this Count.

### CONCLUSION

The Court should grant judgment on the pleadings in Plaintiffs' favor and declare the Statute unconstitutional and preempted, thereby barring Defendant from enforcing it.

Dated: June 10, 2020

Respectfully submitted,

By /s/ Joshua A. Randlett
    Joshua A. Randlett
    RUDMAN WINCHELL
    84 Harlow Street
    P.O. Box 1401
    Bangor, ME 1401
    Email:  jrandlett@rudmanwinchell.com

Scott H. Angstreich*
Collin R. White *
Alex A. Parkinson*
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Email:  sangstreich@kellogghansen.com

*Attorneys for Plaintiffs*
CTIA – The Wireless Association® and
USTelecom – The Broadband Association

Jeffrey A. Lamken*
MOLOLAMKEN LLP
The Watergate, Suite 600
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
Email:  jlamken@mololamken.com

*Attorney for Plaintiff*
ACA Connects – America's Communications
Association

* admitted *pro hac vice*

    *Attorneys for Plaintiffs*
    ACA Connects – America's Communications
    Association, CTIA – The Wireless
    Association®, NCTA – The Internet &
    Television Association, and USTelecom –
    The Broadband Association

    Helgi C. Walker*
    Jacob T. Spencer*
    Nick Harper*
    Sarah Akhtar*
    GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.
    Washington, D.C. 20036
    Email:  HWalker@gibsondunn.com

    Sarah E. Erickson-Muschko*
    GIBSON, DUNN & CRUTCHER LLP
    1801 California Street, Suite 4200
    Denver, CO 80202
    Email:  SEricksonmuschko@gibsondunn.com

    *Attorneys for Plaintiff*
    NCTA – The Internet & Television
    Association

{R2291749.1 71521-079126 }

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing document entitled

***Plaintiffs' Reply in Support of Their Motion for Judgment on the Pleadings and***

***Opposition to Defendant's Partial Cross-Motion for Judgment on the Pleadings*** via the

Court's CM/ECF system, which will serve a copy of same upon all counsel of record.

Dated: June 10, 2020

/s/ Joshua A. Randlett
Joshua A. Randlett, Esq.