UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| ACA CONNECTS – AMERICA'S COMMUNICATIONS ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AARON M. FREY, in his Official Capacity as the Attorney General of the State of Maine,<br><br>Defendant. | CIVIL ACTION NO.: 1:20-cv-00055-LEW |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF HIS
PARTIAL CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Aaron M. Frey submits this Reply in further support of his Partial Cross-Motion for Judgment on the Pleadings (ECF No. 30).

In their combined Reply and Opposition ("Reply"), Plaintiffs did not dispute the strong presumption against the preemption of Maine's Privacy Law (*see* Def.'s Opp'n (ECF No. 28) at 14).[1] This concession is determinative. Nowhere in either their Motion or their Reply have Plaintiffs identified a "clear and manifest" preemptive purpose, never mind actual conflict, sufficient to overcome Maine's broad power to protect the privacy rights of its citizens. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Arizona v. U.S.*, 567 U.S. 387, 400

---

[1] Defendant limits the arguments in this Reply to the question of preemption, the sole subject of Defendant's Motion for Judgment on the Pleadings. That said, Defendant reserves argument on the points raised in Plaintiffs' Reply, including their unsupported contention that Defendant waived any argument that less than intermediate scrutiny should apply. *Compare, e.g.*, Pls.' Reply (ECF No. 56) at 3 ("Defendant does not contest that ISPs' use of consumer information to communicate with customers is protected 'speech within the meaning of the First Amendment.'") *with* Def.'s Opp'n 2 ("The Law—assuming it implicates the First Amendment at all—should at most be subject to intermediate scrutiny as a regulation of commercial speech . . . .").

(2012); *Philip Morris v. Harshbarger*, 122 F.3d 58, 68 (1st Cir. 1997). Maine's Privacy Law therefore is not preempted, and Defendant is entitled to judgment on Counts Three, Four, and Five.

The Joint Resolution in which Congress disapproved of the FCC's ISP Privacy Order is an archetypal example of Congressional action without unmistakable preemptive intent. *See* Joint Resolution, Pub. L. No. 115-22, 131 Stat 88 (Apr. 3, 2017). Certainly, as a general matter, a Joint Resolution can preempt conflicting law just as a federal statute can. But preemption must flow from the law's text, which here, by design, is virtually non-existent. *See Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988). On its face, the Joint Resolution merely expresses "disapproval" of the ISP Privacy Order, thereby rendering it inoperative and forbidding the FCC from adopting similar rules. That is, in its entirely, the Joint Resolution's "full preemptive force" (Pls.' Reply (ECF No. 56) at 14). Plaintiffs' contention that Congress did more—that it "vacate[d] the *ISP Privacy Order* as an obstruction to the adoption of a uniform consumer privacy regime" (Pls.' Reply 14)—is therefore entirely unmoored from the Joint Resolution's content.

Plaintiffs' assertion that there was nonetheless "a widely shared view" that Congress, through the Joint Resolution, intended to "prevent the imposition of ISP-only-rules" is likewise pulled from thin air (Pls.' Reply 14). The only thing that the Congressional Record makes clear is that there was no singular understanding in Congress at all, including among the legislators that Plaintiffs quote (*see* Pls.' Reply. 14), as to why the ISP Privacy Order was disapproved.

As described in Defendant's Opposition, there are multiple reasons why Congress may choose to express disapproval of an administrative rule, including concern about that rule being "too burdensome, excessive, inappropriate or duplicative." 142 CONG. REC. S3683 (1996) (Statement for the Record by Sens. Nickles, Reid, and Stevens). Consistent with this range of

objections, proponents of the resolution in both chambers expressed a wide variety of rationales for the Joint Resolution (*see* Def.'s Opp'n. 17). While some no-doubt objected to singling out ISPs, others expressed concern about everything from FCC overreach to the abandonment of case-by-case enforcement. *See* 163 CONG. REC. H2489 (2017) (Rep. Blackburn) (explaining that the "FCC unilaterally swiped jurisdiction from the Federal Trade Commission," that "two privacy cops on the beat" would cause confusion, and that the FCC could already enforce privacy rules case-by-case); *id.* at H2493 (Rep. Flores) (criticizing FCC rule for "reduc[ing] consumer choice"; being "detrimental to the survival of many business"; prohibiting "unforeseeable future uses of collected data" regardless of consumer preferences; and singling out ISPs); *id.* at H2497 (Rep. Collins)[2] (characterizing rules as "onerous"; sowing "confusion"; and unnecessary given the existence of other state and federal protections, including FCC and FTC authority to protect customer privacy "case-by-case"); *id.* at S1928 (Sen. Thune) (criticizing "overregulat[ion] of the digital world" though "complex, confusing" rules and the FCC's "stunning bureaucratic power grab" at the FTC's expense; and characterizing the FCC as "the wrong venue" for a "single, uniform set of privacy rules").

Yet despite the diversity of viewpoints, not a single legislator even hinted at the Joint Resolution having a preemptive effect on state law. In fact, if anything, the commonly-held view among proponents of the Joint Resolution was that it would *not* undo privacy protections that existed at the state level. *See, e.g., id.* at H2497 (Rep. Collins) (noting that "many other existing Federal and State privacy rules that ISPs must continue to follow" would remain); *id.* at S1925 (Sen. Flake) (explaining that the Joint Resolution would not "leave consumers unprotected" given

---

[2] While Defendant's page citation was accurate, it inadvertently attributed a quote to Representative Capuano, rather than to Representative Collins (Def.'s Opp'n 17). That error in no way compromises the broader point that there was no clear, unified Congressional intent behind the Joint Resolution.

the existence of "various other Federal and State laws"). As Senator Thune, a leading proponent of the Joint Resolution, put it: "To those people who have heard that this resolution somehow results in the elimination of all online protections for consumers . . . it will repeal only a specific rulemaking at the FCC that has yet to be implemented." *Id.* at S1928-29. That statement is hardly indicative of broad preemptive intent, never mind a directive giving rise to actual conflict with Maine's Privacy Law.

The same is true of the RIF Order, in that it neither contains an affirmative expression of preemptive intent—at least not one that survived the D.C. Circuit's ruling in *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019)—nor represents a regulatory scheme with which Maine's Privacy Law could conflict. In its RIF Order, the FCC reinterpreted broadband Internet not as a communications service under Title II of the Communications Act, but rather as an information service under Title I of the Act, RIF Order ¶ 2,[3] which itself is "not an independent source of regulatory authority." *Mozilla*, 940 F.3d at 76 (quoting *People v. State of Cal. v. FCC*, 905 F.2d 1216, 1240 n.35 (9th Cir. 1990)). In so doing, the FCC expressly left regulation of broadband privacy to the FTC. RIF Order ¶ 181.

True enough, the FCC did, at the same time, adopt a Transparency Rule under 47 U.S.C. § 257(a), which requires ISPs to disclose certain "network management practices, performance characteristics, and commercial terms of its broadband internet access services," *see* 47 C.F.R. § 8.1. But the nature of the FCC's authority under Section 257 is quite limited, in that it requires the FCC to "complete a proceeding for the purpose of identifying and eliminating, by regulations pursuant to its authority under this chapter (other than this section), market entry barriers . . . in the provision and ownership of telecommunication and information services," 47 U.S.C. § 257(a),

---

[3] Declaratory Ruling, Report and Order, *Restoring Internet Freedom*, FCC 17-166, 33 FCC Rcd. 311 (2018).

and to report to Congress on how that goal can be achieved by statutory changes, *id.* § 257(c).[4] The Transparency Rule is thus simply a permissible means of fulfilling the statute's decidedly narrow charge, namely identifying those barriers. *Mozilla*, 940 F.3d at 47.

The Transparency Rule does not, by contrast, represent a comprehensive approach to regulating ISPs, or protecting privacy rights more generally. Unlike the regulatory regime at issue in *Geier v. Am. Honda Motor Co., Inc.*, which the Department of Transportation adopted pursuant to an express Congressional delegation of authority, 529 U.S. 861, 864-65 (2000), the FCC did not definitively decide, nor could it have definitively decided, that "privacy disclosures and uniform enforcement" represents the optimal approach (Pls.' Reply 15). Rather, as described above, the FCC determined that it had no authority to design such a regulatory regime in the first instance, and that power does not otherwise exist in Section 257. Accordingly, no matter how the FCC characterized its actions in the RIF Order, statements to that effect do not preempt state law because they are not backed by an exercise of Congressionally delegated authority. *Mozilla* F.3d at 83; *accord Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

In short, Maine's Privacy Law would conflict with the RIF Order only if it frustrated the FCC's efforts to gather information about barriers to market entry. Self-evidently, the Law does not hinder this endeavor, nor have Plaintiffs argued otherwise. Further, and at the very least, no aspect of the RIF Order reflects the sort of "clear and manifest" preemptive purpose necessary to forbid passage of state-level privacy protections.

As to the federal disclosure requirements, Plaintiffs have rightfully conceded that Count V is moot (Pls.' Reply 15). To be clear, however, Defendant never indicated that Maine's Privacy Law permits the unrestricted use of "de-identified *or* aggregated information" (Pls.' Reply 15

---

[4] Congress replaced Section 257(c) with a similar reporting requirement during the same year that the RIF Order was adopted. *See Mozilla*, 940 F.3d at 47 (citing 47 U.S.C. § 163).

(emphasis added)). Rather, only information that meets both criteria—i.e., information that is deidentified *and* aggregated—escapes the requirements of the Law (Def.'s. Opp'n 19).

## Conclusion

For the above reasons, Defendant respectfully requests that the Court grant Defendant's Partial Cross-Motion for Judgment on the Pleadings.

DATED:  June 23, 2020

Respectfully submitted,

AARON M. FREY
Attorney General

/s/ Jason Anton
Jason Anton
Assistant Attorney General
jason.anton@maine.gov

Christopher C. Taub
Deputy Attorney General

Paul Suitter
Assistant Attorney General

Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145

**CERTIFICATE OF SERVICE**

    I hereby certify that on this, the 23rd day of June, 2020, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve a copy of such document upon all counsel of record.

                                                       /s/ Jason Anton
                                                       Jason Anton