# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

ACA CONNECTS – AMERICA'S COMMUNICATIONS ASSOCIATION;

CTIA – THE WIRELESS ASSOCIATION®;

NCTA – THE INTERNET & TELEVISION ASSOCIATION; and

USTELECOM – THE BROADBAND ASSOCIATION,

    Plaintiffs,

 v.

AARON FREY, in his official capacity as Attorney General of the State of Maine,

    Defendant.

Civil Action No. 1:20-cv-00055-LEW

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION TO EXCLUDE SCOTT JORDAN AS EXPERT WITNESS**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I. Jordan's Opinion That ISPs Are Appropriately Subjected To Targeted Regulation Is Unreliable And Irrelevant, And Should Therefore Be Excluded ................. 1

II. Jordan's Opinion That The Statute Falls Squarely Within The "Field" Of Privacy Regimes Is Unreliable, And Should Therefore Be Excluded ................................ 6

CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000)...................................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)...................................................................................................2

*Edenfield v. Fane*,
   507 U.S. 761 (1993)................................................................................................4, 5

*Faulkner v. Arista Records LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014).........................................................................6

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...................................................................................................7

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
   161 F.3d 77 (1st Cir. 1998).........................................................................................2

*Santos v. Posadas De Puerto Rico Assocs., Inc.*,
   452 F.3d 59 (1st Cir. 2006).........................................................................................6

**STATUTE**

Me. Rev. Stat. tit. 35-A, § 9301(4)(A).................................................................................5

**OTHER AUTHORITY**

FTC, *A Look at What ISPs Know About You: Examining the Privacy Practices of Six Major Internet Service Providers, an FTC Staff Report* (Oct. 21, 2021) ............................................3

# INTRODUCTION

The State's Opposition (Dkt. 89, "Opp.") makes clear that Professor Scott Jordan's ultimate opinions are unreliable, irrelevant, and not supported by any analysis Jordan actually undertook.

With respect to Jordan's first opinion, the State attempts to defend the "limited opinion" that "regulating ISPs *differently*" is "*consistent* with the fact that ISPs are different from edge providers." Opp. 4-5 (first emphasis added). But Jordan's opinion is that "*[t]argeted* regulation of [ISPs] is consistent with the distinctive role that ISPs play." Rep. 2 (emphasis added). Maine's Statute does not regulate ISPs and edge providers differently; it imposes burdensome regulations *only* on ISPs, while leaving all the other entities that collect, use, and share online consumer information unregulated. In any event, and what is dispositive here, Jordan's opinion is based on speculation about what ISPs actually do, unsupported by any comparative analysis of the risks ISPs and non-ISPs pose to consumer privacy. Further, it contradicts the comparative analysis he offers elsewhere, and is uninformed by any expertise in advertising — the primary non-service-related use for online consumer information.

With respect to Jordan's second opinion, the State does not seriously attempt to defend Jordan's opinion that the Statute "falls squarely within the range of privacy laws in the field." Rep. 4. Instead, it rewrites that broad opinion as a narrow rebuttal to Professor Yoo's comprehensive analysis. But however framed, an opinion based on cherry-picked regimes, none of which includes the features that make Maine's Statute unique, is unreliable and should be excluded.

# ARGUMENT

**I.     Jordan's Opinion That ISPs Are Appropriately Subjected To Targeted Regulation Is Unreliable And Irrelevant, And Should Therefore Be Excluded**

As explained in Plaintiffs' Motion, Jordan's first opinion — that "[t]argeted regulation of [ISPs] is consistent with the distinctive role that ISPs play" — should be excluded for four

independent reasons: (1) it rests on speculative assertions, not sufficient facts or data, Mot. 7-9; (2) it is unreliable and irrelevant because Jordan did not analyze risks to consumer privacy, *id.* at 9-12; (3) it contradicts Jordan's support for a comprehensive federal privacy framework, *id.* at 12-15; and (4) Jordan has no advertising expertise, *id.* at 15-16. The State's opposition only confirms these points and underscores the unreliability and irrelevance of Jordan's first opinion.[1]

*First*, the State admits that Jordan's opinion that targeted regulation is appropriate rests on the premise that "ISPs are different from edge providers" — that is, "ISPs collect different information than edge providers do" and "ISPs use collected information in different ways." Opp. 5. But the State does not dispute that Jordan lacks "specific knowledge" or "personal knowledge" of what consumer information ISPs and edge providers (or other non-ISPs) *actually* collect, and how they *actually* use such information. Tr. 43:11-20. That admitted lack of knowledge renders Jordan's opinions speculative and conjectural, warranting exclusion. Mot. 9.

The State's responses fail. As an initial matter, the fact that ISPs must "transport packets [of information] for their customers" does not mean that they "have the ability to read those packets." Opp. 13. Among other things, encryption limits the technical ability of ISPs, but not edge providers, to view customer information. In fact, Jordan concedes that when a packet is "encrypted," an ISP "can't see the content" in the packet, and he has "no reason to believe that ISPs are attempting to decrypt" these packets. Tr. 56:23-57:2, 207:8-11. And *critically*, the State does not dispute that encryption is nearly universal, accounting for 90-95% of all Internet traffic,

---

[1] The relevant question under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is whether an expert's "bottom-line opinions" are reliable and relevant. *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998). Although the State asserts that Jordan offers seven opinions, it concedes that the sixth is simply "an outgrowth" of the first five, and thus Jordan offers just two bottom-line opinions, which Plaintiffs seek to exclude. Opp. 2-3.

2

which means that ISPs cannot view the overwhelming majority of information they transport.

Nor do the third-party sources the State cites bridge the gap between theory and practice. For example, the State does not explain how the FCC's vacated *ISP Privacy Order* could be "the most important third-party analysis of ISP behavior." Opp. 14. As Plaintiffs explained — and the State nowhere refutes — the FCC's Order focused only on ISPs because, at the time it was adopted, the FCC was the only federal agency with privacy jurisdiction over ISPs, and it lacked such jurisdiction over edge providers, data brokers, and all the other entities that collect and use consumer information. *See* Mot. 4 & n.4. Because Maine is not subject to any such jurisdictional restrictions, the *ISP Privacy Order* has no bearing on targeted regulation of ISPs *by the State*.

Nor did Jordan ever supplement his report to account for an FTC staff report published "one month after the submission of" his report. Opp. 14. During his deposition, Jordan referenced the staff report only in passing without specifying what report he was referring to or how that staff report informed his opinions. *See* Tr. 43:6-10. And relying on the FTC staff report would not give Jordan specific knowledge of what the ISPs the Statute regulates actually collect, use, and share, since the FTC staff report uses the term ISP not to refer "purely [to] the provision of internet access," as the Statute does, but instead to encompass the "panoply of services" that ISPs and their affiliated companies offer. FTC, *A Look at What ISPs Know About You: Examining the Privacy Practices of Six Major Internet Service Providers, an FTC Staff Report* 1 n.1. (Oct. 21, 2021).

Jordan in fact relied "'heavily on [ISPs'] privacy policies.'" Opp. 14. But the State spends multiple pages arguing that Jordan's earlier paper based on the "privacy policies of eighteen different companies engaged in the Internet ecosystem" is irrelevant — an argument equally applicable to Jordan's opinion here. *Id.* at 11. And to the extent privacy policies could support an opinion about the differences between ISPs and non-ISPs, they would need to be the subject of a

*comparative* analysis, which Jordan did not perform. Had he done so, as in his earlier paper, the analysis would show that targeted ISP-only regulation is *not* appropriate, because non-ISPs collect and use the same (or more) consumer information as ISPs. *See* Mot. 13-15. That analytical gap alone renders Jordan's opinion about ISP-only regulation unreliable.

*Second*, as the State concedes, Jordan has no concept of privacy risk and has not analyzed what conduct poses risks to consumer privacy, much less whether ISPs pose unique risks to consumer privacy. Opp. 5-6, 9. But if Jordan's opinion that ISPs and non-ISPs are "different" is at all relevant to the State's defense, *he must necessarily explain why the difference matters with respect to real harms to consumer privacy*. And to opine that targeted and exclusive regulation of ISPs is "consistent" with those differences, he must explain why ISPs pose unique risks — or present unique harms. But Jordan "did not conduct such an analysis," *id.* at 9, which means there is nothing to support his ultimate opinion in the context of this case. And while the State claims that "risk" is irrelevant, *id.* at 5, it is the State's burden to demonstrate that Maine has an interest "substantial" enough to justify targeted regulation solely of ISPs. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 584 (2000). The State cannot satisfy this burden unless it demonstrates that "the harms" the Statute seeks to prevent "are real" and that targeted regulation of ISPs "will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993).

*Third*, the State proclaims that there is "nothing contradictory" between Jordan's opinion endorsing targeted and exclusive regulation of ISPs and his support for "comprehensive federal legislation and different standards for ISPs *as part of such legislation*." Opp. 6 (emphasis added). But "'applying different rules'" for different types of entities within a "'comprehensive'" scheme (*id.* at 7) is not the same as supporting regulation that imposes rules *solely* on only one type of entity, while leaving all other entities unregulated. And although Jordan may not offer a

4

"normative judgment" about Maine's policy choices (*id.* at 4), his opinion that targeted and exclusive regulation of ISPs is "consistent" with their role cannot be squared with Jordan's many declarations that edge providers collect, use, and monetize large amounts of consumer information. *See* Mot. 13-15. Indeed, Jordan acknowledges that some edge providers such as "Google and Facebook" are able to "collect personal information from consumers across a high percentage of websites," Rep. 26, and these companies "'use much of the personal information they collect for behavioral advertising,'" Tr. 127:5-8. And Jordan concedes that *unlike ISPs*, "Facebook, Google, and Amazon have been sued, on multiple occasions, by both private parties and government entities related to collection and use of consumer information." *Id.* at 154:3-8.

*Finally*, Jordan's opinion is unreliable and irrelevant because he is admittedly not qualified to opine on advertising or marketing practices. Mot. 15-16. The State purports to be "puzzl[ed]" at "Plaintiffs' emphasis on advertising" because the Statute "does not single out advertising." Opp. 7-8. But the relevance of digital advertising is obvious: The Statute restricts the collection and use of consumer information *only* for *non*-service-related purposes. *See* Me. Rev. Stat. tit. 35-A, § 9301(4)(A). And Jordan agrees that "targeted advertising" is the primary non-service-related use of consumer information. Tr. 49:13-18, 117:16-21. Thus, the question whether the Statute "alleviate[s]" "real" harms "to a material degree," *Edenfield*, 507 U.S. at 770-71, naturally depends — at least in part — on whether ISPs use consumer information for targeted advertising more or less than non-ISPs do. But Jordan did not analyze this question. Tr. 22:9-23:1, 48:8-24, 51:17-20, 194:20-24. And he is not qualified to opine on that question. In fact, the State admits that Jordan "does not purport to be intimately familiar with how ISPs advertise, nor does he contend that ISPs' 'advertising practices pose risks to consumer privacy.'" Opp. 7. Jordan's lack of expertise stands in stark contrast to that of Plaintiffs' expert, Adam Towvim, who has numerous

5

qualifications that make him well-positioned to opine on the advertising practices of ISPs and edge providers. Pls.' Opp. to Mot. to Exclude Towvim Ex. 1 at 1, Dkt. 91-1. Whatever Jordan's credentials in other fields, he lacks the requisite qualifications in the "particular field" in which he is offering an opinion. *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

## II. Jordan's Opinion That The Statute Falls Squarely Within The "Field" Of Privacy Regimes Is Unreliable, And Should Therefore Be Excluded

Jordan's second opinion — that the Statute "falls squarely within the range of privacy laws in the field" — should also be excluded. The opinion is based on an insufficient and unrepresentative sample of just three regimes (one defunct, one foreign), and suffers from too great an analytical gap between those limited facts and Jordan's conclusion. Mot. 16-20. The State's opposition does not meaningfully attempt to defend the reliability of Jordan's second opinion.

The State concedes, as it must, that Jordan did not perform a "comprehensive analysis" of privacy laws. Opp. 17; *see also* Tr. 281:19-23 (Jordan did not examine regimes other than the three his report discusses). Significantly, the State does not even attempt to argue that Jordan's analysis could support his broad opinion that the Statute "falls *squarely within the range* of privacy laws in the *field*." Rep. 4 (emphases added). Instead, the State now says that Jordan's second opinion has the "limited" purpose of "rebut[ting] Professor Yoo's Report" by offering some "additional examples" of privacy laws. Opp. 16-18. But the opinion Jordan offered is not framed as a rebuttal to Yoo's report. *See* Rep. 4. In addition, "the standard for a rebuttal expert witness is the same as for any expert witness." *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 386 (S.D.N.Y. 2014). The State does not explain how Jordan could rebut Yoo's opinions without analyzing the regimes Yoo addresses, especially when Jordan, by his own admission, is not even "aware" of whether other States have "broad privacy regimes that cover a wide range of entities."

6

Tr. 255:13-22. In sum, Jordan's opinion about the "field" of privacy laws is based on a manifestly insufficient factual basis. The Court should exclude it.

The State's opposition also confirms that the "analytical gap" between the narrow facts Jordan considered and the conclusion he reached is indefensible. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Once again, the State retreats from the opinion in Jordan's report and instead attempts to defend the truism that "different privacy regimes have varied scopes." Opp. 18. But the State cannot support an opinion "that Maine's Privacy Law fits comfortably within the myriad privacy regimes that police the Internet ecosystem" simply by "noting that each regime identifies its own reach and defines its own regulated terms." *Id.* The State does not and cannot explain how Jordan's conclusion follows from that premise, which is an additional reason why Jordan's second opinion should be excluded as unreliable.

Moreover, the State offers no support for its *ipse dixit* that the few privacy regimes Jordan examined are "benchmarks of available policy options for protecting Internet privacy." Opp. 17. Nor could it. The *ISP Privacy Order* was vacated by Congress and the European Union's regime is not subject to the First Amendment. Mot. 18. And *none* of the three regimes Jordan considered combines two of the features — regulating only ISPs and subjecting non-sensitive data to opt-in consent — that make Maine's Statute an outlier. As a result, even the truncated opinion the State's opposition defends fails to rebut Yoo's opinion that the Statute is unprecedented. Jordan's second opinion should be excluded.

## CONCLUSION

The Court should exclude Jordan's opinions that (i) targeted regulation solely of ISPs is appropriate because they are different from non-ISPs, and (ii) the Statute falls squarely within the range of privacy laws in the field.

7

Dated: June 3, 2022                                    Respectfully submitted,


                                                        By *Jonathan P. Hunter*

Scott H. Angstreich*                                       Jonathan P. Hunter
Collin R. White*                                           RUDMAN WINCHELL
Alex A. Parkinson*                                         84 Harlow Street
KELLOGG, HANSEN, TODD, FIGEL                               Bangor, ME  04401
& FREDERICK, PLLC                                          Email:  jhunter@rudmanwinchell.com
1615 M St. NW, Suite 400
Washington, D.C. 20036                                     Joshua D. Dick*
Email:  sangstreich@kellogghansen.com                      GIBSON, DUNN & CRUTCHER LLP
                                                           555 Mission Street, Suite 300
*Attorneys for Plaintiffs*                                 San Francisco, CA  94105
CTIA – The Wireless Association® and                       Email:  JDick@gibsondunn.com
USTelecom – The Broadband Association
                                                           Helgi C. Walker*
Jeffrey A. Lamken*                                         Jacob T. Spencer*
MOLOLAMKEN LLP                                             Nick Harper*
The Watergate, Suite 600                                   Sarah Akhtar*
600 New Hampshire Ave., NW                                 GIBSON, DUNN & CRUTCHER LLP
Washington, D.C. 20037                                     1050 Connecticut Avenue, N.W.
Email:  jlamken@mololamken.com                             Washington, D.C.  20036
                                                           Email:  HWalker@gibsondunn.com
*Attorney for Plaintiff*
ACA Connects – America's Communications                    Sarah E. Erickson*
Association                                                GIBSON, DUNN & CRUTCHER LLP
                                                           1801 California Street, Suite 4200
* admitted *pro hac vice*                                  Denver, CO 80202
                                                           Email:  SErickson@gibsondunn.com

                                                           *Attorneys for Plaintiff*
                                                           NCTA – The Internet & Television
                                                           Association

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document entitled *Reply in Support of Plaintiffs' Motion to Exclude Scott Jordan as Expert Witness* via the Court's CM/ECF system, which will serve a copy of same upon all counsel of record.


Dated: June 3, 2022                                                                  *Jonathan P. Hunter*
                                                                                                    Jonathan P. Hunter, Esq.