# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF MAINE

ACA CONNECTS – AMERICA'S
COMMUNICATIONS ASSOCIATION, *et al.*,

Plaintiffs,

v.

AARON M. FREY, in his Official Capacity as
the Attorney General of the State of Maine,

Defendant.

CIVIL ACTION NO.: 1:20-cv-00055-LEW

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF
## MOTION TO EXCLUDE OPINION TESTIMONY OF ADAM C. TOWVIM

Defendant Attorney General Aaron M. Frey submits this reply memorandum in further support of his motion to preclude Plaintiffs' expert, Adam C. Towvim, from offering opinions in this matter. Plaintiffs appear to concede that, given he has no academic training in the field (and the "academic research" he cites is anything but (Mot. 2-3)), Mr. Towvim, in the parlance of Federal Rule of Evidence 702, is an *experience* witness (*see* Opp'n 9; *see also* Mot. 4). Because the testimony of an experience witness runs the risk of being *ipse dixit*, *United States v. Gonyer*, No. 1:12-cr-00021-JAW, 2012 WL 3043020, at *2 (D. Me. July 24, 2012), "*the witness* must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts," Fed. R. Evid. 702 cmte. n. to 2000 amnds. (emphasis added); *see also United States v. Raymond*, 700 F. Supp. 2d 142, 146 (D. Me. 2010) (same); *cf. Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016) (proponent's obligation to establish reliability and relevance). Mr. Towvim has not met this burden, and Plaintiffs' scattershot attempts to rehabilitate him are meritless.

### A. Mr. Towvim has almost no experience with ISPs, and therefore he is not qualified to offer experience-based testimony about their collection and use of consumer data.

Mr. Towvim's opinions in this case amount to a comparison of ISPs' collection and use of consumer data to that of other internet actors (*see* Mot. Ex. A ("Rpt.") 2, 5).[1] As Defendant explained in his Motion (Mot. 5-8), Mr. Towvim lacks the requisite familiarity with ISPs to authoritatively execute that comparison. He has not shown how his experience "is a sufficient basis for [his] opinion[s]," or how it "le[d] to the conclusion[s] [he] reached." Fed. R. Evid. 702 cmte. n. to 2000 amnds. Accordingly, he should be precluded from testifying. *See Plott v. NCL Am., LLC*, 786 F. App'x 199, 204 (11th Cir. 2009).

In a futile attempt to summon the requisite experience from thin air, Plaintiffs cite Mr. Towvim's advertising work with a "wide variety of companies" (Opp'n 1), complete with misleading references to "ISPs" in plural (*see id.* at 10). But Mr. Towvim identified exactly zero ISP clients in his report, and when asked point blank about ISP clients at his deposition, he identified not "at least" one (*id.* at 5), but rather *only* one, a mobile ISP from more than four years ago. If work performed for a single mobile ISP were somehow sufficient to render Mr. Towvim an expert on ISP's capabilities and practices, it was his obligation to describe how. He has not.

Plaintiffs also recite, at best, ISP-adjacent experience from Mr. Towvim's resume (*see* Opp'n 10-11). Specifically, they note requests for data from ISPs that Mr. Towvim made that weren't honored,[2] and a "marketing management" class that Mr. Towvim taught at Brandeis that he has not claimed relates to ISPs and admits he did not specifically rely upon in forming his

---

[1] Plaintiffs accurately point out that Defendant inadvertently uploaded a second copy of his Motion, rather than a copy of Mr. Towvim's expert report, as Exhibit A to his Motion. Following a conversation with the case manager, the error has been corrected (*see* ECF Nos. 88, 92).

[2] Plaintiffs also carefully claim that Mr. Towvim's experience at Jumptap—the company at which he made the above-referenced requests—helped him understand not the capabilities of ISPs generally, but rather simply that there is a difference between what ISPs are capable of collecting and what they are willing to share with others (*see* Opp'n 11).

opinions in this case (*see* Mot. Ex. B ("Dep.") 42:18-43:20). Self-evidently, neither suggests a familiarity with the how ISPs gather and use consumer data. Rather, they illustrate the general proposition that experience in a related field does not equate to expertise on the subject matter of this case. *See Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (affirming exclusion of testimony of furniture appraiser as to origin of clock, explaining "[t]hat a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields." (cleaned up)).[3]

The gap in Mr. Towvim's knowledge of ISPs is not merely theoretical, either. He confesses knowing little about the degree to which ISPs collect and use data from pervasive Internet-enabled home devices (which, even though often "offered by a non-ISP" (Opp'n 12 n.3), transfer data through a consumer's ISP) (Dep: 126:23-127:25, 140:6-141:24)).[4] He concedes he does understand how and to what degree ISPs collect and use data from their numerous other services—services not directly regulated by Maine's Privacy Law (*see* Opp'n 11-12), but which produce data that can be paired with that derived from the provision of broadband service to meaningfully expand an ISP's knowledge of its customers (*see* Dep. 208:25-211:21).[5] Mr. Towvim even admits, more broadly, that he lacks familiarity with some of the technical capabilities of ISPs (Dep. 70:9-13). Plaintiffs attempt to cabin this last admission to the "irrelevant subject" of how service is

---

[3] On this point, the First Circuit's decision in *United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987), cited by Plaintiffs (Opp'n 9), stands only for the unremarkable proposition that an expert need not be an academic. It does not suggest that experience "in the field" qualifies an individual in all aspects of that field.

[4] Mr. Towvim claims this is so because such devices do not lend themselves to displaying advertising, highlighting the problematic narrowness of his experience (*see* Dep. 127:2-12; *see also id.* 141:7-12).

[5] *See* Federal Trade Commission, "A Look at What ISPs Know About You: Examining the Privacy Practices of Six Major Internet Service Providers," FTC Staff Report at ii, iv, 17 (Oct. 21, 2021) ("FTC Staff Report"), https://www.ftc.gov/system/files/documents/reports/look-what-isps-know-about-you-examining-privacy-practices-six-major-internet-service-providers/p195402_isp_6b_staff_report.pdf.

3

delivered reliably (Opp'n 11), but (1) Mr. Towvim cites that only as an *example* of technical considerations with which he is not familiar (Dep. 70:16-24), and (2) as Professor Scott Jordan makes clear in his report (*see, e.g.,* Pls.' Mot. to Excl. Ex. A (ECF No. 86-1) ("Jordan Rpt.") 8-11), technical capabilities relating to the provision of service the dictate ISPs' access to data.

To Mr. Towvim's credit, he did attempt—unsuccessfully—to supplement his expertise using "academic articles, trade publications, and available statistics" (Opp'n 14). But given he purports to rely on his *experience*, as discussed further in Part B below, publications are insufficient to cure deficiencies therein. *Cf. United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (review of articles in field did not render witness any more expert than lay person). That said, Mr. Towvim ignored perhaps the most important published source of information, namely privacy policies (what ISPs say they collect and do with customer information), a central tenet of both Professor Jordan's opinion (*see* Jordan Rpt. 9) and the FTC's analysis of ISP data collection.[6]

**B. Mr. Towvim's lack of a coherent methodology renders his opinions inadmissible.**

As explained in Defendant's Motion (Mot. 11-12), a core flaw with Mr. Towvim's testimony is his lack of any identifiable methodology, "the central focus of a *Daubert* inquiry." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir. 1998); *accord* Fed. R. Evid. 702(c) (requiring "reliable principles and methods"); *Brown v. Wal-Mart Stores*, 402 F. Supp. 2d 303, 309 (D. Me. 2005). This deficiency alone is sufficient basis to exclude his opinions.

Plaintiffs contend there is no such flaw, pointing to a line in Mr. Towvim's report—and phrases from his incoherent deposition response—that, in effect, simply restate his experience (Opp'n 14). But "reli[ance] on training and experience" is not a methodology (Rpt. 2). It provides no information on how Mr. Towvim assessed the capabilities of ISPs; from where he derived

---

[6] *See* FTC Staff Report at iii-iv.

4

knowledge on the "technical factors" cited in his report (Rpt. 8); how he determined the impact of consumer choice and mobility; how he defined and measured subsets of non-ISPs; or how he assessed what he terms "privacy risk" (Rpt. 3).

The impact of Mr. Towvim's lack of a coherent methodology is magnified by his eschewal of objective metrics (*see* Mot. 16-18).[7] While they can sometimes aid a factfinder in discerning an expert's analytical approach, Mr. Towvim neither defines his selected metrics—he simply asserts that edge providers pose a greater "privacy risk," and that the data they gather is more "valuable" to advertisers, and therefore "riskier"—nor explains how he uses them to compare ISPs to non-ISPs. The result is that it is nearly impossible to determine how Mr. Towvim reached his conclusions or, for that matter, what they mean. His opinions are accordingly little more than inadmissible *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Daubert v. Merrell Dow Pharms, Inc.*, 43 F.3d 1311, 1319 (1995) (excluding expert testimony where plaintiffs "neither explain[ed] the methodology the experts followed to reach their conclusions nor point[ed] to any external source to validate that methodology"); *cf. Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) ("An expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." (cleaned up)).

Mr. Towvim's "reli[ance] on training and experience," without more, also underscores why his focus on only the largest edge providers is problematic.[8] Perhaps, through a clear methodology,

---

[7] This is not a case like those Plaintiffs cite for the proposition that subjective analysis is adequate. In *Net 2 Press, Inc. v. Emp'rs Fire Ins. Co.*, No. 03-124-P-H, 2004 WL 2110731, at *15 (D. Me. Sept. 22, 2004), the court concluded that a visual inspection of a machine was sufficient for an expert to conclude that a repair was sufficient. And in *GPI-AL, Inc. v. Nissan N. Am.*, No. 17-0511-WS-MU, 2019 WL 5269100, at *7 (S.D. Al. Oct. 17, 2019), where the expert "collected and analyzed a collage of data," the court reasoned that there need not be "quantifiable, objective, singular data point[]" with a "thumbs-up/thumbs down litmus test." Defendant does not demand any such unified metric here, but rather an explanation of the comparison that Mr. Towvim purports to have performed sufficient to deem it reliable.

[8] Plaintiffs challenge this characterization (Opp'n 15), but Mr. Towvim himself describes his analysis this way (*see* Mot. 12-13 (gathering quotes)). Further, Defendant never "concede[d]" that the three largest edge providers account for 70% of digital advertisers (Opp'n 15; *see also* Mot. 13 (they "apparently account for 70% of digital advertising")).

Mr. Towvim could have provided a principled justification for why and how the largest edge providers should guide an assessment of non-ISPs as a whole. As it is, however, Mr. Towvim frames his opinions in terms of *all* non-ISPs (*see, e.g.,* Rpt. 2, 4), including the "very long tail of small companies" (Dep. 227:4), without explaining why the "privacy risk" posed by a company like Google fairly represents that posed by WebMD or the Bangor Daily News. If anything, Mr. Towvim claims the opposite (*see* Mot. 13). His opinions are therefore unreliable and inadmissible.

**C. Plaintiffs' attempts to minimize Mr. Towvim's remaining errors, or ignore them entirely, fall flat.**

A host of other substantive and analytical deficiencies illustrate why Mr. Towvim has failed to reliably apply his experience to the facts of this case. In response, Plaintiffs pretend that some of them do not exist, and minimize those they acknowledge. Neither tactic is successful.

In his Motion, Defendant identified several flaws in Mr. Towvim's opinion that consumer mobility and choice limit ISP data access (Mot. 7-8). Rather than defend Mr. Towvim's conclusions, which correspond to significant portions of his report (*see* Rpt. 13-16, 27-29), Plaintiffs instead characterize the flaws as "minutiae" and claim that they "*at most* . . . go to weight" (Opp'n 12). But absent knowledge of the degree to which customers use the same ISP over the course of the day; hotspot consolidation in Maine; or the Internet speed requirements of Maine consumers—the relevance of which is uncontested by Plaintiffs—Mr. Towvim cannot validly draw the conclusions he has. Further, Defendant does not claim under Federal Rule of Evidence 703, as in the cases cited by Plaintiffs (*see* Opp'n 12), that the foundation for Mr. Towvim's conclusions is too weak, such that the criticisms are only a question of weight. Rather, Defendant contends that without establishing and considering the premises identified above, Mr. Towvim's conclusions are *unreliable*, and therefore inadmissible. *See Joiner,* 522 U.S. at 143-44 (affirming rejection of testimony where there was "simply too great an analytical gap between the

data and the opinion proffered"); *Ruiz-Troche*, 161 F.3d at 81 ("[T]rial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable.").

Plaintiffs employ a similar approach to the sourcing issues in Mr. Towvim's report (*see* Mot. 15-16), opting not to meaningfully address the substance of Defendant's concerns (Opp'n 18-19). They do so at their peril. Mr. Towvim's ignorance as to the nature of a "Working Paper" he heavily cites, and his stubborn reliance on a website that is laughably unreliable (that, appropriately, Plaintiffs made no attempt to defend),[9] each casts considerable doubt on the trustworthiness of opinions he bases upon them, and the reliability of his testimony as a whole.

Finally, Plaintiffs attempt to defend Mr. Towvim's policy proscriptions by simultaneously admitting that he is not a policy expert, and arguing that they are supported by his experience (Opp'n 13). As set forth in great detail in Defendant's Motion (Mot. 8-9), Mr. Towvim throughout his report directly addressed whether targeted regulation of ISPs is "irrational" or "illogical" (*see, e.g.,* Rpt. 6). These are plainly policy positions, the same positions he expressed hesitancy about taking in his deposition because he is unqualified to do so (*see* Mot. 8-9). In fact, Mr. Towvim went so far as to refuse to "speculate" about whether the Maine's Privacy Law would increase consumer privacy in Maine, yet simultaneously offered just such an opinion in his report (*compare* Dep 164:5-9 *with* Rpt. 2). Mr. Towvim's testimony to this end is, accordingly, inappropriate.

---

[9] Even if Mr. Towvim confirmed the accuracy of the statistics reported on the Meterpreter website, and subsequently reproduced a chart that stands for a different proposition from a more reliable source (Opp'n 19), he still cited the website as sole support for the proposition that 90% of internet traffic is encrypted (Rpt. 3 n.3), and doubled down on doing so during his deposition (*see* Dep. 148:4-149:16).

## Conclusion

For the reasons stated above, as well as those identified in Defendant's Motion, Defendant Attorney General Aaron M. Frey respectfully requests that Adam Towvim be precluded from offering any opinions in this matter.

DATED:  June 3, 2022	Respectfully submitted,

AARON M. FREY
Attorney General

/s/ Jason Anton
Jason Anton
Assistant Attorney General
jason.anton@maine.gov

Christopher C. Taub
Chief Deputy Attorney General

Paul Suitter
Assistant Attorney General

Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 3rd day of June, 2022, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve a copy of such document upon all counsel of record.

/s/ Jason Anton
Jason Anton