UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ACA CONNECTS – AMERICA'S COMMUNICATIONS ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AARON M. FREY, in his Official Capacity as the Attorney General of the State of Maine,<br><br>Defendant. | CIVIL ACTION NO.: 1:20-cv-00055-LEW |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
MOTION TO EXCLUDE OPINION TESTIMONY OF CHRISTOPHER S. YOO**

Defendant Attorney General Aaron M. Frey submits this reply memorandum in further support of his Motion to Exclude Opinion Testimony of Professor Christopher S. Yoo ("Motion").

**A. Interpreting Statutes and Comparing Their Scopes Is the Job of Judges, Not Expert Witnesses**

As Defendant explained in his Motion, the substance and purpose of Yoo's testimony is completely inappropriate for this litigation. Mot. at 6-9. Plaintiffs offer three basic responses: (1) Yoo is merely offering the same type of testimony offered by the Attorney General's expert, Professor Scott Jordan; (2) other courts have permitted experts to opine on legal issues; and (3) Yoo offers no inappropriate legal interpretations of Maine's statute. Each response is faulty.

First, as the Attorney General explained in his Opposition to Plaintiffs' Motion to Exclude Scott Jordan as Expert Witness, Jordan offered his opinion that Maine's Privacy Statute "falls squarely within the range of privacy laws in the field" in response and as rebuttal to Yoo's substantively inappropriate testimony. Jordan Opp. at 15-17, 18 n.16 (ECF #89). Jordan was asked to opine on this topic—an area where he has demonstrated ample expertise—in the event

the Court permits Yoo's testimony. But if the Court appropriately precludes Yoo from attempting to explain the meaning of statutes to a federal judge, Jordan need not—and will not—offer testimony placing Maine's Privacy Statute within the range of Internet privacy laws in the field.

Second, Plaintiffs flag several out-of-circuit instances where courts have allowed expert witnesses to opine on topics related to legal issues.[1] But rather than support the admissibility of Yoo's testimony, these cases underscore why his testimony is inappropriate:

- *Antrim Pharm. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423 (7th Cir. 2020) involved a breach-of-contract suit between a pharmaceutical company and its contractor. There, the Seventh Circuit determined that expert testimony regarding the FDA's regulatory regime was appropriate because it was the type of expert testimony "on complex statutory or regulatory frameworks" that "assists the jury in understanding a party's actions within that broader framework." *Id.* at 430-31. The *Antrim* expert was importantly not trying to persuade the jury about the legality of the FDA regime or how the FDA regime compared to other regulatory frameworks. That would have been inappropriate—or in the words of the *Antrim* court: "Experts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." *Id.* at 430.

- *United States v. Crabtree*, 878 F.3d 1274 (11th Cir. 2018) was a criminal prosecution for healthcare fraud, and any comparisons to this suit are completely off-base. The Eleventh Circuit upheld the admission of testimony from a physician regarding doctors' "responsibility to patients in a [partial hospitalization program]," which in turn aided the jury in determining the *fact* of whether the defendant provider was acting "far afield" from normal practices and, ultimately, committing healthcare fraud. *Id.* at 1288. *Crabtree* did not approve expert testimony comparing various healthcare legal regimes.

---

[1] Plaintiffs also cite a District of Maryland case, *United States v. Blair*, 2021 WL 5040334, at *13 (D. Md. Oct. 29, 2021), that provides no unique legal analysis from the circuit court cases discussed *infra*.

2

- In *United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), the Fourth Circuit permitted two experts to testify regarding certain aspects of a complex federal securities legal regime. *Id.* at 175. But the court stressed the testimony was permissible specifically because it could "assist the jury" in determining a fact in issue—specifically whether the criminal defendant engaged in activity that ran afoul of federal securities law. *Id.* at 175. Here, as Plaintiffs repeatedly reminded the court, there is no jury in this case to assist. *See* Pl's. Opp. at 1, 10-11. Nor is there any fact at issue for Yoo to help the factfinder determine. His comparative analysis of Maine's privacy regime to the federal government's and that of other states' does nothing to make any party's material factual contention more or less likely true. When asked at deposition how his report could help a factfinder in this case, Yoo could not provide any meaningful answer, other than to state that he "offered [his] opinion in the hope that it would be helpful to the court . . . to have an expert opinion on which regimes were relevant, which provisions within those regimes were relevant and which detailed aspects of those regimes were, in fact, similar and different in different ways." Dep. at 50:20-53:23 (quotation at 52:13-18). But determining which statutes are legally "relevant" and analyzing the nature and scope of their similarities and differences are legal inquiries. They do not aid the factfinder in determining which *facts* are true.[2]
- The Second Circuit in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) also allowed a securities law expert to testify in a fraud case to help the jury "understand unfamiliar terms and concepts." *Id.* at 1294. But it noted this was an exception to the "general rule [that] an expert's testimony on issues of law is inadmissible." *Id.* Here, a federal judge acting as the factfinder is perfectly capable of analyzing statutes and regulations without the aid of a law professor.

---

[2] Professor Yoo also implied that this Court's resource constraints might be another reason his testimony could be helpful to a factfinder. *See* Dep. at 53:13-23. But any lack of resources to conduct legal research, whether real or imagined, is not a justification for an expert to testify about legal inquiries reserved to the Court.

3

In a recent decision in advance of a jury trial regarding allegations of legal malpractice, Judge Torresen contrasted the type of legal testimony that is sometimes permissible, such as in the cited cases above, with the type of testimony that is not permissible, such as Yoo's. After reiterating the general rule that expert testimony on "purely legal issues is rarely admissible," *Klinges v. Pomerleau*, 2022 WL 1487036 at *4 (D. Me. May 11, 2022) (quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997), the court found that the defendant's proposed expert fit into a narrow exception where an attorney's "opinion may be admissible as to highly technical legal questions, such as the standard of care required of [legal counsel]," *id.* Plaintiffs have made no attempt to explain how Yoo's testimony fits into any such exception to the general rule—nor could they—and therefore his testimony should be excluded.

Finally, Plaintiffs cite specific deposition responses to support their contention that Yoo offers no improper legal analysis. *See* Pl's.' Opp. at 9. But those answers simply cannot be squared with what is set forth in Yoo's expert report.[3] They claim he offers no opinion regarding the applicability of court decisions to the facts here (Pls.' Opp. at 9), but his report contains a lengthy explanation of how *Central Hudson* applies to this case (Yoo. Rep. at 3-6). They argue he offers no opinion on whether the statute is constitutional or satisfies *Central Hudson* scrutiny (Pls.' Opp. at 9), but among his main conclusions are that the statute "cannot reasonably be said to meet the State's asserted goal and purpose of protecting consumer privacy;" that it "is poorly designed to advance the government's interest in protecting consumer privacy;" and that it "does not represent a carefully calculated balance of costs and benefits," (Yoo Rep. at 71).

---

[3] In one instance Plaintiffs claim that Yoo "does not offer opinions about the meaning of ambiguous terms in the statute." Pls.' Opp. at 9. But the portion of the deposition cited by Plaintiffs indicates the *exact opposite*. In response to a question about the purpose of his report, Yoo replied: "The report that I wrote really focused not so much on those ambiguities, although I think that they are—occur in terms of understanding the scope of other statutes which is part of the analysis as well, to determine which—to the extent to which other statutes are like or unlike the Maine statute. And so it requires putting together a number of analyses and reading rationales and drawing on input about how different provisions are likely to function in the real world that my opinion is designed to inform." Dep. at 58:3-12.

As the Attorney General laid out in his Motion, Yoo's disclosure is an amicus brief dressed up in an expert report's clothing. Because of its inappropriate substance, his testimony would not assist a factfinder under Rule 702, and it should be excluded.

**B. Yoo's Methodology—To the Extent He Followed One—Is Unintelligible**

Plaintiffs attempt to construct a coherent methodology for Yoo's choice of privacy regimes in his comparative legal analysis by polishing and selectively quoting excerpts from his incomprehensible deposition response that Defendant quoted in full in his motion. *Compare* Pls.' Opp. at 12 *with* Mot. at 10-11 n.4. Plaintiffs assert that Yoo conducted a "fairly comprehensive census of *all* privacy statutes in the United States." Pls.' Opp. at 12 (emphasis in Opp.). But which is it—"fairly" comprehensive, or "all" privacy statutes? It is impossible to tell. Nothing in Yoo's report explains how he collected—much less selected—"all" privacy statutes in the United States. And given an opportunity to explain at deposition, his meandering response provided no more clarity. Stating that he "relied on third-party lists maintained by other information sources;" that he "can't remember;" and that he "probably did some searches online in legal research tools such as Westlaw" (Dep. at 36:4-11), is not enough to make a showing by a preponderance of the evidence that his methodology meets *Daubert*'s "exacting standards of reliability" that he properly conducted the comprehensive survey he claims to have done, *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000); *see also Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016).

Plaintiffs' justification for Yoo's selection of which regimes to include and which not to include in his analysis fares no better. Plaintiffs fault the Attorney General for not doing Yoo's job for him by neglecting to identify which regimes Yoo should have included in his analysis (Pls.' Opp. at 12-13)—an analysis that as detailed both above and in Defendant's Motion is substantively inappropriate. Yoo, himself, admitted that there are "much longer lists" of privacy regimes that

he did not include because he did not want to "drown the report" with them. Dep. 28:2-6. But Yoo offered no reason for selecting the eight specific regimes discussed in his report other than to state that he chose the ones that he felt were most "relevant" and "comparable" to the Maine Statute. *Id.* at 27:19; 38:9-12. Yet Yoo fails to describe in any meaningful way what is sufficient to qualify as "relevant" or "comparable." Even if it were appropriate for an expert to tell a court which statutes are the most "relevant" and "comparable" to Maine's statute (it is not), Yoo's *ipse dixit* as to what meets that threshold is not enough to satisfy the *Daubert* standard.[4]

Contra Plaintiffs' assertions, this is not simply a situation where Yoo's inadequate methodology goes to the weight and credibility of his testimony. Pls.' Opp. at 16. Yoo is not merely an accountant lacking detailed receipts (*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988)); or a fingerprint specialist examining a faxed image instead of an original print (*United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006)); or an accountant who undertook a method of calculating damages disfavored by one party in the litigation (*Am. Aerial Servs., Inc. v. Terex USA, LLC*, 2015 WL 1947265, at *5-6 (D. Me. Apr. 29, 2015). Rather, he is akin to a medical expert relying only on scientific literature who fails to explain why "[he] relied on the studies that [he] did and, similarly, why [he] disregarded other, incompatible research." *Milward*, 820 F.3d at 474. His opinions should therefore be excluded.

### C. Yoo's Errors Highlight His Testimony's Inappropriateness and Unreliability

In his Motion, the Attorney General pointed out three of the errors that underscore the inappropriateness of Yoo's testimony. Plaintiffs' attempt to rehabilitate Yoo fall flat. Regarding

---

[4] As just one more example of Yoo's say-so approach, he included an analysis of a Delaware statute that does *not* apply to ISPs, merely because it was enacted by inserting its text as "substitute legislation" via committee amendment to a bill that would have regulated ISPs. Yoo Rep. at 19. Why this particular statute's legislative history is worthy of consideration but the countless others across the nation are not worthy is completely unknown, other than Yoo thought it would be a "helpful reference point for the court." Dep. at 35:10-18. In the same deposition answer, Yoo stated that he not only considered "legislation as enacted, but also . . . legislation as proposed," which calls further into question the methodological nature of his "fairly comprehensive census" of privacy statutes. *Id.* at 35:14-18.

the White House Report on "Big Data," Plaintiffs brush aside the fact that "the sentence [Yoo] quoted from (though in a part of that sentence Yoo did not quote) uses the phrase 'online advertising'" instead of "online behavioral advertising." Pls.' Opp. at 17. But the fact that Yoo paraphrased and injected the modifier "behavioral" into "online advertising" rather than provide an accurate quotation from the White House Report *is the point*. Generic online advertisements and targeted online behavioral advertisements are not equivalent—and any purported expert in privacy law such as Yoo undoubtedly knows it. *See* Mot. at 14. Moreover, although "online behavioral ads" are indeed a subset of "online advertising," it is not true that the report "as a whole" focuses on online behavioral advertising. Pls.' Opp. at 17.

The same is true as to Yoo's claim that "courts" have recognized that opt-in consent is "more restrictive than necessary to serve the government interest in protecting consumer privacy," when he could identify only one outlier "court" that has done so. Pls.' Opp. at 18. Referring to this as a "Bluebooking error,"[5] Plaintiffs then rely on their own legal research (again underscoring the inappropriate nature of Yoo's testimony in the first place) to find a second case that purportedly supports Yoo's position. *Id.* But given the chance at deposition to explain this discrepancy, Yoo could not identify the unappealed Western District of Washington case unearthed by Plaintiffs—or any other case for that matter. Dep. 187:15-190:21; 199:17-200:9.

Similar flaws permeate his failure to understand the nuances of what constitutes a "court order" under Minnesota and Maine law. Mot. at 15. Yoo cannot be expected to accurately testify about the scope of various privacy regimes if he does not know what their terms mean under their respective state laws. These errors provide specific context to the deep-seeded flaws that underly the substantive impropriety and methodological unreliability of Yoo's testimony.

---

[5] Yoo has demonstrated the capacity to engage in exceptionally careful proofreading and editing. *See* Mot. at 2 n.1. This was no "Bluebooking error."

## Conclusion

For the reasons stated above, as well as those identified in Defendant's Motion, Defendant Attorney General Aaron M. Frey respectfully requests that Christopher Yoo be precluded from offering any opinions in this matter.

DATED: June 3, 2022                                Respectfully submitted,

                                                        AARON M. FREY
                                                      Attorney General

                                                      /s/ Paul Suitter
                                                      Paul Suitter
                                                      Assistant Attorney General
                                                      paul.suitter@maine.gov

                                                      Christopher C. Taub
                                                      Chief Deputy Attorney General

                                                      Jason Anton
                                                      Assistant Attorney General

                                                      Six State House Station
                                                      Augusta, Maine  04333-0006
                                                      Tel.  (207) 626-8800
                                                      Fax (207) 287-3145

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 3rd day of June, 2022, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve a copy of such document upon all counsel of record.

/s/ Paul Suitter
Paul Suitter